Case 6:25-cv-00018-NKM-CKM   Document 40   Filed 11/06/25   Page 1 of 8
Pageid#: 369

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

11/6/2025
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
      DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| RIVER RIDGE MALL, JV, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DICK'S SPORTING GOODS, INC.,<br><br>*Defendant.* | CASE NO. 6:25-CV-00018<br><br>MEMORANDUM OPINION & ORDER<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant Dick's Sporting Goods, Inc.'s ("DSG") motion to dismiss for failure to state a claim. Dkt. 7. Plaintiff River Ridge Mall JV, LLC ("River Ridge") brought this suit alleging DSG breached the parties' lease by paying "Substitute Rent" rather than "Minimum Rent" after River Ridge allegedly fulfilled the Deferred Co-Tenancy Requirement.[1] Dkt. 6 at 2-86.[2] River Ridge brings two claims against DSG in this case: (i) Count I, seeking a declaratory judgment and three declarations;[3] and (ii) Count II, a breach of contract claim arguing DSG has materially breached the fully executed lease between the parties. *Id.* at 12-14. For the following reasons, the Court will grant DSG's Motion to Dismiss as to both Counts. Dkt. 7.

---

[1] River Ridge initially filed the Complaint in state court. DSG timely removed the matter to federal court based on diversity jurisdiction. *See* Dkt. 1.

[2] Where the complaint lacks paragraph numbers, citations are based on the docket number at the top of the page as, since the case was removed, there are multiple different paginations at the foot of the page.

[3] River Ridge seeks a declaration that it was "authorized to make minor changes" to the Lease Plan, that River Ridge satisfied the requirements of Lease Term 1.7 through opening Ulta and Home Goods, and that River Ridge is entitled to "a monetary judgment for past-due rent." Dkt. 6 ¶ 52.

## LEGAL STANDARD

To survive a motion to dismiss under 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When deciding a motion to dismiss, a court must accept the factual allegations as true and must draw all reasonable inferences in the plaintiff's favor. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). However, a court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted).

Although a complaint "does not need detailed factual allegations" to survive a 12(b)(6) motion, a plaintiff must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action" to survive a 12(b)(6) motion. *Twombly*, 550 U.S. at 555. Rule 12(b)(6) does not require "heightened fact pleading;" however, to survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face". *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (providing that "only a complaint that states a plausible claim for relief survives a motion to dismiss").

When ruling on a motion to dismiss, a court may consider documents incorporated by reference into the complaint, as well as those attached to the motion, provided they are integral to the complaint and authentic. *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (internal quotation marks and citation omitted).

## BACKGROUND

Plaintiff River Ridge owns and operates the River Ridge Mall in Lynchburg, Virginia (the

"Shopping Center"). Dkt. 6 ¶ 2.[4] In 2019, DSG and River Ridge entered into a commercial lease (the "Lease") governing the "construction, inspection, approval, occupation, and use" of a 45,000-square-foot DSG retail location in a new area of the Shopping Center called the "Sears Redevelopment Area." *Id.* ¶¶ 3, 11, 12. The Lease contained a "Deferred Co-Tenancy Requirement," obligating River Ridge to secure suitable co-tenants that would draw customers to the Shopping Center. *Id.* ¶¶ 14, 43. This provision reads in part:

> 1.7 Deferred Co-Tenancy Requirement
>
> (a)   As used in this Section 1.7, the term "Deferred Co-Tenancy Requirement" shall mean that (i) at least one (1) national or regional Required Tenant ***occupying at least sixteen thousand (16,000) square feet of [leasable floor area ("LFA")] within the portion of the Deferred Co-Tenancy Area identified as "16K" on These the Lease Plan***, and (ii) at least one (1) national or regional Required Tenant occupying at least twenty-five thousand (25,000) square feet of LFA within the portion of the Deferred Co-Tenancy Area contiguous to the Demised Premises and identified as "25K" on the Lease Plan, shall be open, fully staffed, stocked and operated as a retail business in substantially all of their respective premises.

*Id.*, Ex. A at 24-25 (emphasis added).

Thus, until appropriate co-tenants opened, Provision 1.7 allowed DSG to pay "Substitute Rent" rather than "Minimum Rent." *Id.* River Ridge does not allege the exact difference between these rates but defines "Substitute Rent" as "2% of [DSG's] gross sales" and "Minimum Rent," as "$540,000 per year." *Id.* ¶¶ 3, 19. In Provision 1.3 of the Lease, River Ridge reserved the right to make changes to any building within the Sears Redevelopment Area, "including changes in configuration and/or location," if they "did not adversely affect" DSG's business operations. *Id.* ¶ 22; Ex. A at 18-19. River Ridge alleges this right included making changes to the Lease Plan—a document depicting a map of the area. *Id.* ¶ 21. River Ridge attached the Lease Please to the

---

[4]   These citations refer to the paragraph numbers in Plaintiff's complaint.

3

Lease. *Id.* ¶ 13; Ex. B. It indicated one co-tenant would occupy "+/- 16,000" square feet and another co-tenant would occupy "+/- 25,000" square feet of the newly developed area. *Id.*, Ex. B.

After establishing the DSG storefront, River Ridge entered commercial leases with Ulta and Home Goods in order to meet the Deferred Co-Tenancy Requirement. Dkt. 6 ¶ 32, 34. In developing its final construction plan, River Ridge changed the Lease Plan, first, accommodating several design requests from both Ulta and Home Goods and, second, adding an additional co-tenant, a regional clothing boutique. *Id.* ¶¶ 23, 34. These changes decreased Ulta's leasable floor area from 16,000 to 10,067 square feet. *Id.*

In August 2020, River Ridge sent DSG a Notice of Delivery, certifying that the Sears Reconstruction Area would comply with the final plan described above rather than the initial Lease Plan, and gave DSG an opportunity to raise objections. Dkt. 6 ¶ 25. DSG raised no objections, and in December 2020, approved the final plan. *Id.* ¶ 29.

Home Goods opened its doors to the public on January 19, 2023; Ulta followed suit on July 7, 2024. Dkt. 6 ¶ 32. In late October 2023, River Ridge notified DSG that the Deferred Co-Tenancy Requirement had been satisfied and demanded payment of Minimum Rent beginning on Ulta's opening date. *Id.*, Ex. C. DSG responded in a January 5, 2024 letter, saying:

> As Landlord is aware, Landlord and Tenant communicated via phone and email regarding the fact that the opening of Ulta in ten thousand (10,000) square feet of LFA will not satisfy the Deferred Ongoing Co-Tenancy Requirement. (*See* enclosed emails between Craig Pettit and Jason Stryker dated March 9-22, 2022). Landlord's representative, Craig Pettit, acknowledged the requirement, specifically inquiring whether there was "any discussion on incentive to allow [DSG] to waive or modify that provision." No waiver or modification was negotiated.

*Id.*, Ex. D at 80.

DSG continued paying Substitute Rent while asserting that Ulta's 10,067-square-foot space did not meet the Deferred Co-Tenancy Requirement. *Id.* ¶ 40. River Ridge brought this suit, seeking a declaratory judgment and alleging breach of contract following DSG's refusal to pay Minimum Rent. Dkt 6.

### ARGUMENT

#### A. Count I's Declarations are "Determinative of Issues" and Thus Not Suitable for Declaratory Judgment

DSG seeks to dismiss Count I, the declaratory judgment claim, as River Ridge "is not entitled to the relief sought under the facts alleged in the complaint." Dkt. 8 at 9. DSG argues that Counts I and II are "effectively the same" and therefore, "should be dismissed for the same reasons." *Id.* The Court disagrees that the claims are the same but agrees with the dismissal of the declaratory judgment claim.

Virginia law allows courts to grant declaratory judgments where "an actual controversy exist[s] between the parties" if the moving party asserts "a declaration of rights." *See* Va. Code. § 8.01-184; *Charlottesville Area Fitness Club Operators Ass'n v. Albemarle Cnty. Bd. of Supervisors*, 285 Va. 87, 737 S.E.2d 1, 6 (2013). A court granting a declaratory judgment must "do so with care and caution," especially if "a declaratory judgment . . . would be determinative of issues," as these cases are "not one[s] for declaratory judgment." *Bd. of Supervisors of Loudon Cnty. v. Purcellville*, 276 Va. 419, 666 S.E.2d 512, 520 (2008) (citing *Williams v. S. Bank of Norfolk*, 203 Va. 657, 125 S.E.2d 803, 807 (1962)).

River Ridge seeks a three-part declaration: first, that River Ridge was "expressly authorized in Section 1.3 of the Lease to make the minor changes" reducing Ulta's square footage; second, that Ulta and Home Goods "satisfied the Deferred Co-Tenancy Requirement upon . . . opening;" and third, that "River Ridge is entitled to further relief directly arising from

5

the controversy, including a monetary judgment." Dkt. 6 ¶ 52. Each of these declarations, if given, would decide the breach of contract claim. River Ridge does not seek a "declaration of rights," but rather attempts to have the Court declare, in three different ways, that DSG has materially breached the Lease. *Charlottesville Area Fitness Club Operators*, 737 S.E.2d at 6. Since River Ridge requests declarations that are "determinative of issues," the Court grants DSG's motion to dismiss Count I. *Bd. of Supervisors of Loudon Cnty*, 666 S.E.2d at 520.

### B. River Ridge Fails to Allege Facts Sufficient to Establish Breach of a Contractual Duty

DSG also seeks to dismiss Count II, the breach of contract claim, as "it is undisputed" that River Ridge has failed to comply with the Deferred Co-Tenancy Requirement, since no "national or regional Required Tenant" occupies "at least sixteen thousand (16,000) square feet" of the Sears Redevelopment Area. Dkt. 8 at 1, 12. The Court agrees.

To state a claim for breach of contract under Virginia law,[5] a plaintiff must allege sufficient facts to establish "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 594 S.E.2d 610, 615 (Va. 2004). However, courts may not dismiss a breach of contract claim if the contract contains ambiguity—this question is reserved for the factfinder. *Geoghegan Sons & Co. v. Arbuckle Bros.*, 139 Va. 92, 123 S.E. 387, 389 (Va. 1924) ("[I]f the situation is such that fair-minded men might reasonably draw different conclusions . . . then the construction of the contract is for the jury.").

When evaluating a contract's ambiguity, courts use the language's "usual, ordinary, and popular meaning." *Pocahontas Min. L.L.C. v. CNX Gas Co., LLC*, 276 Va. 346, 666 S.E.2d 527,

---

[5] Federal courts sitting in diversity must apply the substantive law of the state in which they sit. *See Eric R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Therefore, Virginia law governs these claims.

6

531 (Va. 2008). Under Virginia law, a contract is ambiguous when it can reasonably be understood in more than one way or if it "refers to two or more things at once." *See, e.g., id.*; *Galloway Corp. v. S.B. Ballard Constr. Co.*, 250 Va. 493, 464 S.E.2d 349, 355 (Va. 1995).

The Court now analyzes if the Lease contains ambiguity, considering both complaint and documents "attached to the complaint as exhibits" as they are "explicitly incorporated into the complaint by reference." *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016).[6]

Provision 1.7 of the Lease provides, in part, that "one . . . Required Tenant" must "occupy . . . at least sixteen thousand (16,000) square feet" to satisfy the Deferred Co-Tenancy Requirement. Dkt. 6 at 25. In contrast, the Lease Plan, which is incorporated into the Lease, indicates the Required Tenant could occupy "+/- 16,000" square feet. *Id.*, Ex. B. River Ridge heavily relies on the plus or minus symbol (+/-) to establish that both the Lease and Lease Plan were "intentionally vague about the precise configuration," requiring the denial of DSG's motion to dismiss. Dkt.26 at 2. Further, River Ridge criticizes DSG for its failure to "meaningfully acknowledge[e] the plus/minus symbol . . . in the Lease Plan," relying on an out-of-district case in an attempt to show bad faith on behalf of DSG. *Id.* at 4-5, 8-11.

However, real estate and boundary descriptions often contain these types of symbols. Indeed, plus or minus symbols are considered to convey "slight or unimportant inaccuracy" that may arise during the construction process, and "such designation[s] have no legal value in determining boundaries." 11 C.J.S. Boundaries § 9. Reading no additional meaning into the plus or minus symbol in the Lease Plan, the Court finds that the Lease cannot be interpreted in "two

---

[6] As this is not a substantive question, federal procedural law applies. *See Erie*, 304 U.S. at 78.

or more" ways. *Galloway Corp.*, 464 S.E.2d at 355. And since the Lease cannot be interpreted as such, it is not ambiguous under Virginia law. *Geoghegan Sons & Co.*, 123 S.E. at 389.

As the Lease is not ambiguous, River Ridge has not alleged sufficient facts to show that DSG is in material breach of the Lease. The parties do not dispute that DSG continues to pay Substitute Rent. Dkt. 8 at 8. River Ridge, therefore, fails to state a claim for breach of contract as it has failed to allege DSG breached any obligation in the Lease. Further amendment would be futile, as no additional facts would assist River Ridge in establishing a breach of contract claim as to the Deferred Co-Tenant Requirement in the Lease. Therefore, the Court grants DSG's motion to dismiss Count II with prejudice. *See Crawford v. Senex Law PC*, 259 F. Supp. 3d 464, 475 (W.D. Va. 2017) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)).

## CONCLUSION

Because of the above-stated reasons, Dick's Sporting Goods' Motion to Dismiss is **GRANTED**. River Ridge's complaint is **DISMISSED with prejudice.**

It is **SO ORDERED**.

The Clerk's office is hereby directed to send a copy of this memorandum opinion and order to all counsel of record.

Entered this the  6th  day of November, 2025.

*[signature: Norman K. Moon]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

8