CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

7/2/2026
LAURA A. AUSTIN, CLERK
BY:  s/ ARLENE LITTLE
      DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA**
LYNCHBURG DIVISION

|  |  |
|---|---|
| RIVER RIDGE MALL JV, LLC, | CASE NO. 6:25-CV-00018 |
| *Plaintiff,* | |
| v. | **MEMORANDUM OPINION** |
| DICK'S SPORTING GOODS, INC., | |
| *Defendant.* | JUDGE NORMAN K. MOON |

This case is a commercial dispute between a tenant, Dick's Sporting Goods, Inc. ("DSG"), and its landlord, River Ridge Mall ("River Ridge"), over rent owed under a commercial lease. DSG moves to dismiss River Ridge's amended complaint with prejudice on two separate grounds. First, DSG argues that River Ridge's claims fail as a matter of law under Federal Rule of Civil Procedure 12(b)(6). Dkt. 59. Second, DSG asserts that River Ridge's claims should be dismissed for want of prosecution under Federal Rule of Civil Procedure 41(b) because River Ridge did not oppose DSG's first motion to dismiss. Dkt. 61. For the following reasons, the Court will grant the motions and will dismiss the case with prejudice.

## BACKGROUND

River Ridge and DSG entered a commercial lease (the "Lease") on December 2, 2019. Dkt. 56 ¶ 11. The Lease provided DSG with a 45,000 square foot space in the Sears' Redevelopment Area and set two different rates for its rent: (1) "Substitute Rent," a rate "substantially under market value"; and (2) "Minimum Rent," a much higher rate to be paid once River Ridge fulfilled Lease Provision 1.7 (the "Deferred Co-Tenancy Provision"). *Id.* ¶¶ 24, 45, 47; Ex. A at 23-24.

The Deferred Co-Tenancy Provision required River Ridge to provide two additional tenants to the Sears Redevelopment Area, one occupying at least 16,000 square feet and another occupying at least 25,000 square feet. Dkt. 56, Ex. A at 8-9.[1] The Lease also included Provision 1.3 which read, in part: "Landlord reserves the right to . . . make changes to any of the Shopping Center Buildings within the Sears Redevelopment Area (as identified on the Lease Plan), including changes in configuration and/or location." *Id.* at 3.

During construction, River Ridge "reconfigured" the layout of the Sears Redevelopment Area "to allow for a delivery entrance for Home Goods, a new entrance for the mall interior, storage behind the new entrance, and to accommodate a third co-tenant." Dkt. 56 ¶ 32. On June 23, 2020, River Ridge alerted DSG that construction was "substantial[ly] complete" and sent a "Notice of Punch List Inspection" as provided for in the Lease. *Id.* ¶ 33. This "Notice of Punch List Inspection" allowed DSG to ensure the construction had been completed in a "satisfactory manner." *Id.* ¶ 20.[2] Two months later, River Ridge "sent its Notice of Delivery" which established

---

[1]    River Ridge incorporated a Lease Plan into the Lease, which included a "plus or minus" symbol in front of each square footage requirement. Dkt. 54, Ex. B. The Court previously held that this symbol had no legal effect on the square footage requirements and is bound by that holding in this memorandum opinion. Dkt. 40.

[2]    The provision providing for the Punch Lease inspection is Lease Provision 3.4(c)(1), which reads: "The Shopping Center Work shall be substantially complete on the Committed Demised Premises Delivery Date. Landlord shall give Tenant ninety (90) days' prior written notice of the Demised Premises Delivery Date (which notice shall be referred to as the **"Notice of Punch List Inspection"**). The Notice of Punch List Inspection shall state that on or before the Demised Premises Delivery Date, Landlord shall deliver possession of the Demised Premises substantially complete, in conformity with the requirements for Landlord's Demised Premises Work set forth in this Lease, and any revisions thereto, and relevant exhibits, excluding specifically described punch list items and that the Demised Premises shall be free of all occupancies. The Notice of Punch List Inspection shall also state that Landlord intends to deliver the Common Areas with Landlord's Work substantially complete, on or before the Demised Premises Delivery Date. Upon Tenant's receipt of the Notice of Punch List Inspection, Landlord and Tenant shall then arrange to meet at the Demised Premises on a date within five (5) days prior to the Demised Premises Delivery Date set forth in the Notice of Punch List Inspection in order to inspect the Demised Premises and

2

the construction "would be completed in compliance with the Final Plans—not the Lease Plan." *Id.* ¶ 34. The Final Plans showed two co-tenants, Home Goods, which would occupy 25,018 square feet, and Ulta, which would occupy 10,067 square feet. Rather than raising any objections, DSG "accept[ed] possession" on "December 4, 2020" and "at no point . . . assert[ed] that [River Ridge] failed to complete the construction . . . in conformity with the . . . construction requirements in the Lease." *Id.* ¶¶ 36, 37.

Approximately three years later, the co-tenants opened their retail locations according to the Final Plans—Home Goods opened on January 19, 2023, and Ulta opened on July 7, 2023. Dkt. 54 ¶¶ 35, 40. River Ridge alerted DSG, on October 18, 2023, that "rent for the Demised Premises reverted to Minimum Rent after" "July 7, 2023" (Ulta's opening day). *Id.* ¶¶ 45, 48. DSG disputed the increased rent as Ulta's store was nearly six thousand square feet smaller than Lease Provision 1.7 required. DSG continued paying Substitute Rent.

River Ridge filed an action against DSG in Lynchburg Circuit Court, which DSG promptly removed in February 2025. Dkt. 1. DSG moved to dismiss River Ridge's declaratory judgment and breach of contract claims, Dkt. 7, and on November 6, 2025, the Court granted the motion with prejudice. Dkt. 40. River Ridge moved for reconsideration, arguing that the Court erred by dismissing the case with prejudice which precluded River Ridge from amending its complaint to raise a waiver argument. Dkt. 42. The Court granted River Ridge's motion for reconsideration (in part) and gave it 30 days to file an amended complaint. Dkt. 49.

Yet, River Ridge did not file an amended complaint within the 30 days provided. Dkt. 50. River Ridge also failed to respond to the Court's show cause order, causing the Court to dismiss

---

Common Areas together and to produce a punch list (**"Punch List"**) of remaining items to be completed by Landlord." Dkt. 56, Ex. A at 18.

the case. Dkts. 51-52. Following this dismissal, River Ridge moved to reopen the case which the

Court granted. Dkts. 53, 55, 56. DSG timely filed a 12(b)(6) motion to dismiss on June 10, 2026,

but River Ridge failed to oppose it. Dkt. 59. Because River Ridge missed another deadline, DSG

filed a Rule 41(b) motion to dismiss. Dkt. 61.

Across both motions, DSG asserts that: (1) River Ridge has consistently failed to prosecute

this case; (2) River Ridge fails to state a claim in its amended complaint and further amendment

would be futile; and (3) under Lease Provision 17.17, River Ridge should be held responsible for

DSG's legal fees.[3] Dkts. 60, 62.

### LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a

complaint to determine whether a plaintiff has stated a claim such that the court can grant relief.

The complaint's "[f]actual allegations must be enough to raise a right to relief above the

speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint "does not

need detailed factual allegations" to survive a 12(b)(6) motion; however, a plaintiff must provide

"more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action."

*Twombly*, 550 U.S. at 555. Plaintiff's allegations must be taken as true, and all reasonable

inferences must be drawn in the plaintiff's favor during 12(b)(6) motions to dismiss. *King v.

Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Under Federal Rule of Civil Procedure 41(b), "if the plaintiff fails to prosecute or to comply

with . . . a court order, a defendant may move to dismiss the action." This sanction is within the

---

[3]     This provision reads: "If any legal action is instituted as a result of a default by either Party
under this Lease that is not cured within the applicable cure period, the prevailing Party in such
action shall be entitled to recover its reasonable attorney's fees from the non-prevailing Party."
Dkt. 54, Ex. A at 55.

court's inherent authority; yet, it is "harsh" and must be "weighed against the 'sound public policy of deciding cases on the merits.'" *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 373 (4th Cir. 2013); *Dove v. CODESCO*, 569 F.2d 807, 810 (4th Cir. 1978) (quoting *Riezakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974)). Because of these strong policy considerations, dismissal under this rule "should not be invoked lightly." *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978).

## ANALYSIS

### A. River Ridge's Repeated Dilatory Actions Require Dismissal of the Case with Prejudice

When ruling on a Rule 41(b) motion, the Court must consider four factors: "(i) the degree of personal responsibility of the plaintiff; (ii) the amount of prejudice caused the defendant; (iii) the existence of a history of deliberately proceeding in a dilatory fashion, and (iv) the existence of a sanction less drastic than dismissal." *See Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989) (citing *Chandler Leasing Corp. v. Lopez,* 669 F.2d 919, 920 (4th Cir. 1982)); *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978). Rather than operating as a "rigid four-prong test," these factors allow a Court to consider the "particular circumstances of a case" in coming to a conclusion about dismissal. *Id.* As Rule 41(b) dismissals function as "adjudication on the merits," "dismissal with prejudice is appropriate" if a court grants a Rule 41(b) motion. *McCall v. Flagship Credit Acceptance*, 2022 WL 1046253, at *2 (W.D. Va. Apr. 7, 2022). The Court applies these four factors to the case and concludes dismissal with prejudice is appropriate.

First, it is difficult to ascertain whether the missed deadlines are attributable to River Ridge or its counsel. River Ridge is a sophisticated party; has assistance from outside counsel; and has an obligation to monitor the litigation it files. *E.g.*, *United States v. Merrill*, 258 F.R.D. 302, 309 (E.D.N.C. 2009) (finding United States personally responsible "when failures by the government's counsel should have been apparent" and "the United States [] made no effort to appoint a new

attorney to handle the matter."). But due to the difficulty of ascertaining River Ridge's *personal* responsibility as to these delays, the Court gives this factor little weight.

Second, DSG has faced "concrete, ongoing, and compounding prejudice" because of River Ridge's delays. Dkt. 62 at 5. DSG has expended significant resources, both "maintaining a legal hold and preserving documents at ongoing operational cost," and "incur[ring] significant attorney's fees" with little to no certainty that River Ridge will respond to filings. *Id.* at 6. Because of the prejudice DSG has faced (and will continue to face if this case persists), the second factor weighs in favor of dismissal with prejudice.

Third, as enumerated above, River Ridge (1) failed to timely file an amended complaint after the Court granted the motion to reconsider; (2) failed to show cause as to why the Court should not dismiss the case for lack of prosecution; (3) failed to oppose DSG's motion to dismiss the amended complaint; and (4) failed to participate in the Rule 26(f) planning meeting. Dkt. 63. These actions demonstrate a pattern of dilatory action in this case. As such, the third factor weighs heavily in favor of dismissal with prejudice. *See Attkisson v. Holder*, 925 F.3d 606, 625 (4th Cir. 2019), as amended (June 10, 2019) ("[M]ultiple violations of the Federal Rules and the applicable court orders" support Rule 41(b) dismissal).

And finally, the Court previously dismissed the case without prejudice after River Ridge missed the amended complaint deadline and failed to show cause. Dkt. 52. This action was a less drastic sanction than dismissal with prejudice. Yet, this less drastic sanction was ineffective as River Ridge has further delayed this case by failing to oppose the motion to dismiss and failing to participate in the Rule 26(f) conference. Because the Court has already attempted dismissal without prejudice, no other less drastic sanction exists. The fourth factor cuts in favor of dismissal with prejudice.

As the majority of factors support dismissal, the Court will grant DSG's motion to dismiss River Ridge's amended complaint under Rule 41(b) with prejudice. Dkt. 61.[4]

### B. River Ridge Fails to State a Claim Upon which Relief Can be Granted

Even if River Ridge had prosecuted this action, its amended complaint nonetheless fails to state a breach of contract claim. Its two remaining arguments are: (1) DSG waived its right to a 16,000 square foot co-tenant; or alternatively, (2) Lease Provision 1.3 granted River Ridge the unilateral ability to modify the square footage requirements of Lease Provision 1.7. Dkt. 49.[5] Neither succeeds.

#### 1. Waiver

To demonstrate that a non-breaching party has waived a breach of contract, the breaching party must allege "knowledge of the facts basic to the exercise of the [contractual] right" and "the intent to relinquish the right." *Employers Commercial Union Ins. Co. of Am. v. Great Am. Ins. Co.*, 200 S.E.2d 560, 562 (Va. 1973); *Bergmueller v. Minnick,* 383 S.E.2d 722, 725 (Va. 1989). Waiver "may be inferred from the conduct of the waiving party." *Perry Engineering Co., Inc. v. AT&T Comms., Inc.*, 1993 WL 254461, at *5 (4th Cir. July 13, 1993) (citing *Woodmen of World Life Ins. Soc'y v. Grant*, 38 S.E.2d 450, 454 (Va. 1946)). Under Virginia law, however, an implied waiver of contractual rights requires "clear and unmistakable proof of an intention to waive such rights." *Creteau v. Phoenix Assur. Co. of N.Y.*, 119 S.E.2d 336, 339 (1961).

---

[4]    The Court need not weigh the policy preference of resolving the case on the merits, because it next considers DSG's 12(b)(6) motion and grants it as well—simultaneously dismissing the case for failure to prosecute and failure to state a claim.

[5]    The Court's order on the motion for reconsideration permitted River Ridge to argue any new legal theories, but it was not permitted to argue that Lease Provision 1.7 contained ambiguity. Dkt. 49.

River Ridge alleges that DSG, through "accepting possession . . . confirmed its approval of the manner in which the [Sears Redevelopment Area] [was] designed" and thus "waiv[ed] its right to assert continuing challenges to the . . . size." Dkt. 56 ¶¶ 37, 60. River Ridge's complaint, however, is completely silent as to DSG's *intent*. DSG's silence cannot be construed as "clear and unmistakable proof of an intention." *Creteau*, 119 S.E.2d at 339.[6] Because River Ridge fails to allege "[f]actual allegations [sufficient to] raise a right to relief above the speculative level" concerning DSG's intent, it fails to plead sufficient facts establishing an "unmistakable waiver" under Virginia law.[7] *Twombly*, 550 U.S. at 555.

### 2. Modification

"Virginia law requires that an interpretation of a contract not render a term meaningless." *City of Chesapeake v. States Self-Insurers Risk Retention Grp., Inc.*, 628 S.E.2d 539, 541 (Va. 2006). Indeed, courts must consider the contract as a whole—"giving effect to each [provision] when reasonably possible." *Schuiling v. Harris*, 747 S.E.2d 833, 836 (Va. 2013).

Here, River Ridge argues Lease Provision 1.3, which reserves River Ridge's right to "make changes to any of the Shopping Centers Buildings within the Sears Redevelopment Area . . . including changes in configuration and/or location," "gives [River Ridge] the express authority to

---

[6]     River Ridge tries to allege DSG acquiesced by approving the Final Plans. Yet, "[a]cquiescence, that is, the failure to protest or object, is an element of waiver; but does not of itself constitute waiver." *Stanley's Cafeteria, Inc. v. Abramson*, 306 S.E.2d 870, 874 (Va. 1983) (quoting *May v. Martin*, 137 S.E.2d 860, 864 (Va. 1964)). And River Ridge's allegations that DSG continues to "stand on its contractual rights" by refusing to pay Minimum Rent cast further doubt on the acquiescence theory. *Cf. Virginia Polytechnic Inst. & State Univ. v. Interactive Return Serv., Inc.*, 595 S.E.2d 1, 6 (Va. 2004).

[7]     Though DSG provided the Court with emails between the parties as Exhibit 1 to the motion to dismiss, Dkt. 59-2, the Court excludes them from consideration at this stage of the litigation as River Ridge did not refer to the emails in its amended complaint and if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." Fed. R. Civ. Proc. 12(d).

redesign the layout and position" of buildings in the Sears Redevelopment Area, including the square footage requirements in Lease Provision 1.7. Dkt. 56 ¶ 62. This argument fails for two reasons.

First, adopting this reading of Lease Provision 1.3 renders Lease Provision 1.7 meaningless. Lease Provision 1.7 sets specific square footage requirements for DSG's co-tenants; indeed, the provision allowing DSG to pay Substitute Rent is expressly conditioned on the square footage requirements being met. Dkt. 56, Ex. A at 9 ("If the Deferred Co-Tenancy Provision is not satisfied . . . then Tenant shall pay to Landlord monthly . . . Substitute Rent."). The Court will not adopt a reading of Lease Provision 1.3 that renders Lease Provision 1.7 meaningless.

Second, granting River Ridge the ability to nullify Lease Provision 1.7's square footage requirements would directly conflict with Lease Provision 17.19, which states "[t]his Lease shall not be modified in any way except by a writing subscribed to by both Parties." Dkt. 56, Ex. A at 55. Adopting a reading of Lease Provision 1.7 that did not include the square footage requirements (which the Court has previously held are unambiguous), grants River Ridge the power to unilaterally modify the contract. For both of these reasons, the Court will grant DSG's motion to dismiss under 12(b)(6) for River Ridge's modification claim.

As neither of River Ridge's theories support a breach of contract claim (Count One), and as the declaratory judgment claim (Count Two) is pled as being dependent on Count One's success,[8] the Court will grant DSG's motion to dismiss for failure to state a claim on both counts. Dkt. 59.

### C. DSG May Be Liable for Fees and Costs

---

[8]    River Ridge's complaint reads, in relevant part, "River Ridge, therefore, seeks a declaration that *if* River Ridge is found to be entitled to a monetary judgment on Count I for past-due rent from through the date of judgment, plus interest, costs, and attorney's fees, ***then*** the Court should declare that River Ridge satisfied the Deferred Co-Tenancy Requirement." Dkt. 56 ¶ 75.

In its second motion to dismiss, DSG asks the Court for fees and costs under Section 17.17 of the Lease, which provides: "[i]f any legal action is instituted as a result of a default by either Party under this Lease that is not cured within the applicable cure period, the prevailing Party in such action shall be entitled to recover its reasonable attorney's fees from the non-prevailing Party." Dkt. 62 at 10; Dkt. 56, Ex. A at 55. DSG argues that this provision is "self-executing," and that it need only establish it is the "prevailing party" to recover under it. The Court will give DSG an opportunity to further explain why it is entitled to fees and costs and will set a briefing scheduling by separate order.

**CONCLUSION**

For the foregoing reasons, the Court will grant DSG's motion to dismiss for failure to state a claim, Dkt. 59, and, alternatively, its motion to dismiss for lack of prosecution, Dkt. 61. The Court will dismiss the case with prejudice under Rule 41(b) and, alternatively, because further amendment would be futile.

A separate order will issue.

The Clerk of Court is directed to send a copy of this memorandum opinion to all counsel of record.

It is **SO ORDERED.**

Entered this 2nd of July, 2026.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE